**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------------X

Jun Hua Yang, *on behalf of herself*
*and all other employees similarly*
*situated,*

                                   Plaintiff,

                 v.

Case No:

**COLLECTIVE ACTION**
**COMPLAINT**

RAINBOW NAILS SALON IV INC. d/b/a
RAINBOW NAILS IV, and Gina Dang,

                                 Defendants,

------------------------------------------------------------------X

        Plaintiff Jun Hua Yang ("Plaintiff"), on behalf of herself and all others similarly situated, by and through their attorneys, Hang & Associates, PLLC, hereby bring this complaint against Defendants Rainbow Nails Salon IV Inc. d/b/a Rainbow Nails IV, and Gina Dang (collectively "Defendants") and alleges as follows:

## INTRODUCTION

        1.      This action is brought by Plaintiff, on behalf of herself as well as other employees similarly situated, against Defendants for (1) alleged violations of the Federal Labor Standards Act, ("FLSA") 29 U.S.C. §§ 201 *et seq.*, and of New York Labor Law §§190 *et seq.* ("NYLL"), arising from Defendants' various willful and unlawful employment policies, patterns and/or practices; and (2) the unlawful national origin discrimination in which Defendants engaged in violation and deprivation of rights secured to Plaintiff under the New York City Administrative Law, §8-101, *et seq.,* the New York State Human Rights Law, N.Y. Executive Law § 290, *et seq.*, and 42 U.S.C.§ 1981.

2.      Upon information and belief, Defendants have willfully and intentionally committed widespread violations of the FLSA and NYLL by engaging in a pattern and practice of failing to pay their employees, including Plaintiff, compensation for all hours worked, minimum wage, and overtime compensation for all hours worked over forty (40) each workweek, as well as failing to provide their employees, including Plaintiffs, with wage notice at the time of hiring and wage statements.

3.      Plaintiff alleges pursuant to the FLSA, that they are entitled to recover from the Defendants: (1) unpaid minimum wages, (2) unpaid overtime wages, (3) reimbursement for expenses relating to tools of trade; (4) liquidated damages, (5) prejudgment and post-judgment interest; and/or (6) attorneys' fees and costs;

4.      Plaintiff alleges pursuant to NYLL §190 *et seq.* and Title 12 of New York Codes, Rules and Regulations Part 146 ("NYCRR") that they are entitled to recover from the Defendants: (1) minimum wages, (2) unpaid overtime compensation, (3) compensation for failure to provide wage notice at the time of hiring and failure to provide paystubs in violation of the NYLL, (4) liquidated damages equal to the sum of unpaid minimum wage and unpaid overtime pursuant to the NY Wage Theft Prevention Act; (5) prejudgment and post-judgment interest; and (6) attorney's fees and costs.

5.      Plaintiff further alleges pursuant to New York State Human Rights Law, New York Executive Law §§ 296 *et seq.* ("NYSHRL"), New York City Human Rights Law, New York City Administrative Law § 8-107 *et seq.*, ("NYCHRL"), and 42 U.S.C. §1981, that she is entitled to recover from the Defendants: (1) an award of monetary damages and other relief, including attorneys' fees and expenses with interest; and (2) liquidated damages.

## JURISDICTION AND VENUE

6.      This Court has original federal question jurisdiction over this controversy under 29 U.S.C. §216(b), 28 U.S.C. § 1331, and has supplemental jurisdiction over the NYLL, NYSHRL, and NYCHRL claims pursuant to 28 U.S.C. § 1367(a).

7.      Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. §§ 1391(b) and (c), because Defendants conduct business in this District, and the acts and omissions giving rise to the claims herein alleged took place in this District.

## PLAINTIFF

8.       Plaintiff is an individual residing in Queens, New York.

9.      From in or around January 2000 to on or around July 28, 2018, Plaintiff was employed as a nail technician in Defendants' nail salon located at 42-14 Broadway, Astoria, NY 11103.

## DEFENDANTS

*Corporate Defendant*

10.     Upon information and belief, Rainbow Nails Salon IV Inc d/b/a Rainbow Nails IV ("Corporate Defendant or Defendant Corporation") is a domestic business corporation organized under the laws of the State of New York with a principal place of business located at 42-14 Broadway, Astoria, NY 11103.

11.     Upon information and belief, Corporate Defendant has about ten (10) employees.

12.     Upon information and belief, Corporate Defendant at all relevant times is a business engaged in interstate commerce that has gross sales in excess of Five Hundred Thousand Dollars ($500,000) per year.

3

13.     Upon information and belief, Corporate Defendant purchased and handled goods moved in interstate commerce. For instance, Corporate Defendant has employees who handled and worked on goods moved in commerce such as nail polish and supplies.

14.     At all times relevant times, Corporate Defendant was, and continues to be, an "enterprise engaged in commerce" within the meaning of FLSA.

*Owner/ Operator Defendant*

15.     Upon information and belief, Defendant Gina Dang ("Defendant Dang") is the owner, chief executive officer, director and/or managing agent of Defendant Corporation and participated in the day-to-day operations of Defendant Corporation and acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. §203d, and regulations promulgated thereunder, 29 C.F.R. §791.2; NYLL §2 and the regulations thereunder; and is jointly and severally liable with Defendant Corporation.

16.     Upon information and belief, Defendant Dang owns the stock of Defendant Corporation and manages and makes all business decisions regarding Defendant Corporation, including but not limited to determining the amount of salary the employees will receive and the number of hours employees will work.

17.     Upon information and belief, Defendant Dang determined the wages and compensation of the employees of Defendants, including Plaintiff, and established work schedules and work load of the employees, maintained employee records, and had the authority to hire and fire employees.

18.     At all relevant times, the work performed by Plaintiff was directly essential to the business operated by Defendants.

4

19.     Plaintiff has fulfilled all conditions precedent to the institution of this action and/ or conditions have been waived.

## **FLSA COLLECTIVE ACTION ALLEGATIONS**

20.     Plaintiff brings this action individually and on behalf of all other and former non-exempt employees who have been or were employed by the Defendants at their nail salon locations for up to the last three (3) years, through entry of judgment in this case (the "Collective Action Period") (the "Collective Action Members"). Upon information and belief, the Collection Action Members are so numerous the joinder of all members is impracticable. The identity and precise number of such persons are unknown, and the facts upon which the calculations of that number may be ascertained are presently within the sole control of the Defendants. Upon information and belief, there are more than ten (10) Collective Action members, who have worked for or have continued to work for the Defendants during the Collective Action Period, most of whom would not likely file individual suits because they fear retaliation, lack adequate financial resources, access to attorneys, or knowledge of their claims. Therefore, Plaintiff submits that this case should be certified as a collection action under the FLSA, 29 U.S.C. §216(b).

21.     Plaintiff will fairly and adequately protect the interests of the Collective Action Members, and has retained counsel that is experienced and competent in the field of employment law and class action litigation. Plaintiff has no interests that are contrary to or in conflict with those members of this collective action.

22.     This action should be certified as collective action because the prosecution of separate action by individual members of the collective action would risk creating either inconsistent or varying adjudication with respect to individual members of this class that would as

5

a practical matter be dispositive of the interest of the other members not party to the adjudication, or subsequently impair or impede their ability to protect their interests.

23.     A collective action is superior to other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable. Furthermore, inasmuch as the damages suffered by individual Collective Action Members may be relatively small, the expense and burden of individual litigation makes it virtually impossible for the members of the collective action to individually seek redress for the wrongs done to them. There will be no difficulty in the management of this action as collective action.

24.     Questions of law and fact common to members of the collective action predominate over questions that may affect only individual members because Defendants have acted on grounds generally applicable to all members. Among the questions of fact common to Plaintiff and other Collective Action Members are:

a. Whether the Defendants employed Collective Action members within the meaning of the FLSA;

b. Whether the Defendants' violations of the FLSA are willful as that terms is used within the context of the FLSA; and,

c. Whether the Defendants are liable for all damages claimed hereunder, including but not limited to compensatory, punitive, and statutory damages, interest, costs and disbursements and attorneys' fees.

25.     Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a collective action.

26.     Plaintiff and others similarly situated have been substantially damaged by Defendants' unlawful conduct.

6

## STATEMENT OF FACTS

27.     Defendants committed the following alleged acts knowingly, intentionally and willfully.

28.     Defendants knew that the nonpayment of minimum wage, nonpayment of overtime pay, the failure to provide the required wage notice at the time of hiring and to provide the required wage statement with every payment of wages, failure to reimburse Plaintiff for expense incurred in relation to tools of the trade used by Plaintiff in order to perform nail technician's job duties, and unlawful nationality origin discrimination against Plaintiff would financially injure Plaintiff and similarly situated employees and violate state and federal laws.

29.     Defendants employ an elaborate scheme to dock the wages of their employees. Defendant Dang regularly faked paystubs of Defendants' employees, including Plaintiff, so that the work hours reflected on paystubs constantly remained around 20 to 30 hours. Defendant Dang also forced Defendants' employees, including Plaintiff, to sign on their wage receipts.

30.     From in or around January 2000 to on or around July 28, 2018, Plaintiff was employed as a nail technician in Defendants' nail salon located at 42-14 Broadway, Astoria, NY 11103.

31.     Upon information and belief, Defendant Dang, known as "Boss" to Plaintiff, is the owner/shareholder of Defendant Corporation and maintains active operational control over Defendant Corporation, including but not limited to hiring and firing employees, supervising and controlling the employees, setting their work schedule, determining their rates of compensation and methods of payment, handling payrolls, and maintaining employee records.

32.     Defendant Dang hired Plaintiff as a nail technician for Defendant Corporation.

33.     Defendant Dang controlled and determined the work schedule of Plaintiff.

34.    Defendant Dang determined the rates of compensation of Plaintiff and methods of payment.

35.    Defendant Dang handled wage payments to Plaintiff and maintained her employment records.

36.    Plaintiff was not provided a written wage notice, in English and in Chinese (the primary language identified by Plaintiff) when she was hired, including but not limited to information about her rate of pay and basis thereof, allowances, including tip and meals credits, claimed by Defendants, and the regular pay day designated by Defendants.

37.    From on or around January 1, 2012 to on or around July 28, 2018, Plaintiff worked five days per week with Monday and Thursday off. Generally, Plaintiff worked without a break from 10:00 am to 8:00 pm. Nevertheless, during nail salon's summer season (the months of June, July, and August) ("Summer Season"), Plaintiff would work until around 9:30pm to 10:00 pm for three days per week. Plaintiff therefore worked approximately fifty (50) hours per week for normal weeks and for approximately fifty-five (55) hours per week during the Summer Season.

38.    From on or around January 1, 2012 to on or around December 31, 2014, Plaintiff was paid at a fixed rate of $80.00 per day regardless the number of hours she actually worked each day.

39.    From on or around January 1, 2015 to on or around July 28, 2018, Plaintiff was generally paid at a fixed rate of $85 per day regardless the number of hours she actually worked each day. Nevertheless, during Summer Season, Plaintiff was often paid at about $100 per day, while during winter season (the months of December, January, and February) ("Winter Season"), Plaintiff was often paid at around $70 per day, though Plaintiff still worked approximately fifty (50) hours per week during the Winter Season.

40.     Throughout her employment with Defendants, Plaintiff's compensation was paid through the combination of cash and check. Defendant generally would issue a check in amount of about $400.00 once a month, while the rest amount of Plaintiff's compensation was paid to her weekly by cash.

41.     Throughout her employment with Defendants, Plaintiff was not required to punch time or otherwise track her work hours. Nevertheless, Defendant Dang required Plaintiff to sign on wage receipts, on which the number of work hours was faked to be remained between 20 to 30 hours per week.

42.     Throughout her employment with Defendants, Plaintiff was not compensated for minimum wages and all hours worked above forty (40) in each workweek according to state and federal laws.

43.     Throughout her employment with Defendants, Plaintiff was not overtime-exempt under federal and state laws.

44.     Throughout her employment with Defendants, Defendants did not provide Plaintiff with a correct wage statement with every wage payment.

45.     As a nail technician, Plaintiff regularly received tips. Plaintiff, however, was never given a notice regarding Defendants' intention to take tip credit against the minimum wage.

46.     Defendants knowingly and willfully operated their business with a policy of not reimbursing Plaintiff for expenses incurred in relation to tools of the trade used by Plaintiff in order to perform nail technician's job duties. For instance, Plaintiff was required by Defendants to purchase necessary tools and supplies, including but not limited to, professional nail filing drill system, nail clippers, nail scissors, nail files, nail buffers, cuticle nippers, nail trimmers, professional hand gloves and face masks. Plaintiff spent around $350.00 on purchasing the nail

9

filing drill system, $35.00 on purchasing tool set (such as nail clippers, nail scissors, cuticle nippers, nail trimmers, etc.), and around $5.00 per week on professional hand gloves and face masks.

47.    Among the approximately ten (10) nail technicians employed by Defendants, about three (3) are Chinese who were born in the People's Republic of China, including the Plaintiff; the others are Vietnamese.

48.    Throughout Plaintiff's employment with the Defendants, there was a two-tier system under which the Chinese and Vietnamese nail technicians, who did substantially the same type of work and had similar levels of skills and experience, were provided with different work conditions and treated differently.

49.    Defendant Dang did not allow Chinese nail technicians, including the Plaintiff, to have lunch inside of the nail salon, while Vietnamese nail technicians were always allowed to have lunch inside of the nail salon. Even during the Winter Season, Chinese nail technicians were forced by Defendant Dang to have lunch outside the salon.

50.    Defendant Dang regularly yelled at Chinese nail technicians, including Plaintiff, that "you Chinese are idiot!" when Chinese nail technicians made no mistakes in performing their job duties.

51.     Defendant Dang always assigned their "good clients," those who known to give more tips, only to Vietnamese nail technicians.

**STATEMENT OF CLAIMS**

**COUNT I**

10

**[Violations of the Fair Labor Standards Act—Minimum Wage
Brought on behalf of Plaintiff and the FLSA Collective]**

52.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

53.     At all relevant times, upon information and belief, Defendants have been, and continue to be, "employers" engaged in interstate "commerce" and/or in the production of "goods" for "commerce," within the meaning of the FLSA, 29 U.S.C. §206(a) and §207(a). Further, Plaintiff is covered within the meaning of FLSA, U.S.C. §§206(a) and 207(a).

54.     At all relevant times, Defendants employed "employees" including Plaintiff, within the meaning of FLSA.

55.     Upon information and belief, at all relevant times, Defendants have had gross revenues in excess of $500,000.

56.     The FLSA provides that any employer engaged in commerce shall pay employees the applicable minimum wage. 29 U.S.C. § 206(a).

57.     At all relevant times, Defendants had a policy and practice of refusing to pay the statutory minimum wage to Plaintiff, and the collective action members, for some or all of the hours they worked.

58.     The FLSA provides that any employer who violates the provisions of 29 U.S.C. §206 shall be liable to the employees affected in the amount of their unpaid minimum compensation, and in an additional equal amount as liquidated damages.

59.     Defendants knowingly and willfully disregarded the provisions of the FLSA as evidenced by failing to compensate Plaintiff and Collective Class Members at the statutory

minimum wage when they knew or should have known such was due and that failing to do so would financially injure Plaintiff and Collective Action members.

## COUNT II
### [Violation of New York Labor Law—Minimum Wage
### Brought on behalf of Plaintiff]

60.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

61.     At all relevant times, Plaintiff was employed by Defendants within the meaning of New York Labor Law §§2 and 651.

62.     Pursuant to the New York Wage Theft Prevention Act, an employer who fails to pay the minimum wage shall be liable, in addition to the amount of any underpayments, for liquidated damages equal to the total of such under-payments found to be due the employee.

63.     Defendants knowingly and willfully violated Plaintiff's rights by failing to pay her minimum wages in the lawful amount for hours worked.

## COUNT III
### [Violations of the Fair Labor Standards Act—Overtime Wage
### Brought on behalf of Plaintiff and the FLSA Collective]

64.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

65.     The FLSA provides that no employer engaged in commerce shall employ a covered employee for a work week longer than forty (40) hours unless such employee receives compensation for employment in excess of forty (40) hours at a rate not less than one and one-half times the regular rate at which he or she is employed, or one and one-half times the minimum wage, whichever is greater. 29 USC §207(a).

66.     The FLSA provides that any employer who violates the provisions of 29 U.S.C. §207 shall be liable to the employees affected in the amount of their unpaid overtime compensation, and in an additional equal amount as liquidated damages.  29 U.S.C. §216(b).

67.     Defendants' failure to pay Plaintiff and the FLSA Collective their overtime premiums violated the FLSA.

68.     At all relevant times, Defendants had, and continue to have, a policy of practice of refusing to pay overtime compensation at the statutory rate of time and a half to Plaintiff and Collective Action Members for all hours worked in excess of forty (40) hours per workweek, which violated and continues to violate the FLSA, 29 U.S.C. §§201, et seq., including 29 U.S.C. §§207(a)(1) and 215(a).

69.     The FLSA and supporting regulations required employers to notify employees of employment law requires employers to notify employment law requirements. 29 C.F.R. §516.4.

70.     Defendants willfully failed to notify Plaintiffs and FLSA Collective of the requirements of the employment laws in order to facilitate their exploitation of Plaintiff' and FLSA Collectives' labor.

71.     Defendants knowingly and willfully disregarded the provisions of the  FLSA  as evidenced by their failure to compensate Plaintiff and Collective Class Members the statutory overtime rate of time and one half for all hours worked in excess of forty (40) per week when they knew or should have known such was due and that failing to do so would financially injure Plaintiff and Collective Action members.

**COUNT IV**
**[Violation of New York Labor Law—Overtime Pay**
**Brought on behalf of Plaintiff]**

72.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

73.     Pursuant to the New York Wage Theft Prevention Act, an employer who fails to pay proper overtime compensation shall be liable, in addition to the amount of any underpayments, for liquidated damages equal to the total of such under-payments found to be due the employee.

74.     Defendants' failure to pay Plaintiff their overtime premiums violated the NYLL.

75.     Defendants' failure to pay Plaintiff was not in good faith.

## COUNT V

### [Violation of New York Labor Law—Time of Hire Wage Notice Requirement Brought on Behalf of Plaintiff]

76.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

77.     The NYLL and supporting regulations require employers to provide written notice of the rate or rates of pay and the basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as a part of minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer.  NYLL §195-1(a).

78.     Defendants intentionally failed to provide notice to employees in violation of New York Labor Law § 195, which requires all employers to provide written notice in the employee's primary language about the terms and conditions of employment related to rate of pay, regular pay cycle and rate of overtime on his or her first day of employment.

14

79.     Defendants not only did not provide notice to Plaintiff at Time of Hire but also failed to provide notice to Plaintiff thereafter.

80.     Due to Defendants' violations of New York Labor Law, each Plaintiff is entitled to recover from Defendants, jointly and severally, $50 for each workday that the violation occurred or continued to occur, up to $5,000, together with costs and attorneys' fees pursuant to New York Labor Law. N.Y. Lab. Law §198(1-b).

## COUNT VI
### [Violation of New York Labor Law—New York Pay Stub Requirement
### Brought on Behalf of Plaintiff]

81.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

82.     The NYLL and supporting regulations require employers to provide detailed paystub information to employees every payday. NYLL §195-1(d).

83.     Defendants have failed to make a good faith effort to comply with the New York Labor Law with respect to compensation of Plaintiff and did not provide the paystub on or after Plaintiff's payday.

84.     Due to Defendants' violations of New York Labor Law, Plaintiff is entitled to recover from Defendants, jointly and severally, $250 for each workday of the violation, up to $5,000 for each Plaintiff together with costs and attorneys' fees pursuant to New York Labor Law N.Y. Lab. Law §198(1-d).

## COUNT VII

### [Violation of the Fair Labor Standards Act —Failure Reimburse for Expenses relating to
### Tools of the Trade]

85.     Plaintiff on behalf of herself and all other similarly situated Collective Action

15

Members repeats and re-alleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

86.     At all relevant times, the Defendants had a policy and practice of refusing to reimburse Plaintiff for expenses incurred in relation to tools of the trade used by Plaintiff in order to perform her job duties as nail technician. Such tools of the trade include but are not limited to, professional nail filing drill system, nail clippers, nail scissors, nail files, nail buffers, cuticle nippers, nail trimmers, professional hand gloves and face masks.

87.     Defendants knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to reimburse Plaintiff for expenses incurred in relation to tools of the trade used by Plaintiffs when Defendants knew or should have known such was due.

## COUNT VII

### [Violation of the New York State Human Rights Law —Discrimination on the Basis of Race, Ethnicity, and/or National Origin]

88.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

89.     Section 296(1)(a) of the NYSHRL provides that it shall be an unlawful discriminatory practice:

> For an employer [,]…because of an individual's …national origin [,] to discharge from employment such individual or to discriminate against such individual in …terms, conditions or privileges of employment.

90.     By the actions describes herein, Defendants discriminated against Plaintiff on the account of her ethnicity and/or national origin with respect to the terms, conditions, or privileges of her employment her in violation of the NYSHRL.

16

91.     By Defendant Dang's insults and other malicious activity described herein, Defendants further discriminated against Plaintiff by creating a hostile work environment on account of her ethnicity and/or national origin.

92.     The actions of Defendants were committed intentionally, wantonly, with malice.

93.     As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of the NYSHRL, Plaintiffs have suffered and continues to suffer harm for which they are entitled to an award of monetary damages and other relief.

## COUNT VIII
### [Nationality Origin Discrimination under the NYCHRL]

94.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

95.     The NYCHRL, New York City Administrative Law § 8-107(1)(a), provides that it shall be an unlawful discriminatory practice:

> For an employer or an employee or agent thereof . . . because of the . . . national origin. . . of any person . . . to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employments.

96.     As described herein, Defendants discriminated against Plaintiff on account of her Chinese national origin with respect to the terms, conditions, or privileges of her employment in violation of the New York Administrative Law § 8-107.

97.     As described herein, Defendants further discriminated against Plaintiff by creating a hostile work environment, through Defendant Dang's insult and other malicious activity, on account of Plaintiff's ethnicity and/or national origin.

17

98.     The actions of Defendants were committed intentionally, wantonly, with malice.

99.     As a direct and proximate result of Defendants' discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered and continues to suffer monetary and/or economic harm, including but not limited to, loss of past and future income, compensation and benefits, for which he is entitled to an award of monetary damages and other relief, including attorneys' fees and expenses with interest.

100.    As a direct and proximate result of Defendants' discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to stress, anxiety, emotional pain and suffering, and humiliation, for which he is entitled to an award of compensatory and monetary damages and other relief.

## COUNT IX
### [Nationality Origin Discrimination under 42 U.S.C. § 1981]

101.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

102.    Defendants discriminated against Plaintiff on account of her Chinese national origin with respect to the terms, conditions, or privileges of her employment in violation of 42 U.S.C. § 1981, as amended by the Civil Rights Act of 1991.

103.    The actions of Defendants were committed intentionally, wantonly, with malice.

104.    As a result of Defendants' actions, Plaintiff has suffered emotional distress, humiliation, degradation, depression, loss of income, and the benefits of employment.

105.   As a direct and proximate cause of the discriminatory conduct alleged herein, Plaintiff has suffered damages and is entitled to relief, including but not limited to a ward of compensatory damages for emotional distress, and punitive damages in amounts to be determined by the Court.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself, and the FLSA Collective Plaintiff, respectfully requests that this Court enter a judgment providing the following relief:

a)   Authorizing Plaintiff at the earliest possible time to give notice of this collective action, or that the Court issue such notice, to all persons who are presently, or have up through the extent allowable under the statute of limitations and including the date of issuance of court-supervised notice, been employed by Defendants as non-exempt employees. Such notice shall inform them that the civil notice has been filed, of the nature of the action, of their right to join this lawsuit if they believe they were denied premium overtime wages;

b)   Certification of this case as a collective action pursuant to FLSA;

c)   Issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims and state claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b), and appointing Plaintiff and his counsel to represent the Collective Action Members;

d)   A declaratory judgment that the practices complained of herein are unlawful under FLSA and NYLL;

e)      An injunction against Corporate Defendants, its officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of unlawful practices and policies set forth herein;

f)      Award Plaintiff unpaid wages, unpaid overtime, unpaid reimburse for tools of the trade due under the FLSA and the New York Labor Law;

g)      An award of monetary damages and other relief, including attorney's fees and expenses with interest, and liquidated damages pursuant to New York State Human Rights Law, New York City Human Right Law;

h)      An award of costs and expenses of this action together with reasonable attorneys' and expert fees pursuant to 29 U.S.C. §216(b), NYLL, and 42 U.S.C. §1981;

i)      The cost and disbursements of this action;

j)      An award of prejudgment and post-judgment fees; and

k)      Such other and further legal and equitable relief as this Court deems necessary, just, and proper.

Dated: Flushing, New York
August 31, 2018

                       Respectfully Submitted,

                       HANG & ASSOCIATES, PLLC

                       By: /s/   *Xiaoxi Liu*
                        Xiaoxi Liu, Esq.
                        136-20 38th Ave. Suite 10G
                        Flushing, NY 11354
                        Tel: (718) 353-8588

Fax: (718) 353-6288
Email: xliu@hanglaw.com
*Attorneys for Plaintiff and Proposed FLSA*
*Collective*

21

# EXHIBIT A

## CONSENT TO SUE UNDER
## FEDERAL FAIR LABOR STANDARDS ACT

I am an employee currently or formerly employed by Rainbow Nails Salon IV Inc. and Gina Dang, and/or related entities and individuals.

I consent to be a plaintiff in an action to collect unpaid wages.  I agree that I am bound by the terms of the Contingent Fee Retainer signed by the named plaintiff in this case.

_Jin Hua Yang_
Full Legal Name (Print)

_Jin Hua Yang_
Signature

_8/6/18_
Date