UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
JUN HUA YANG,
    *on behalf of herself and all other employees similarly situated,*

                  Plaintiff,

        -against-                       **MEMORANDUM AND ORDER**
                                                                             18-CV-4970-DLI-SJB

RAINBOW NAILS SALON IV INC.,
    *doing business as Rainbow Nails IV*,
GINA DANG,

                  Defendants.
-----------------------------------------------------------------X

**BULSARA, United States Magistrate Judge:**

On August 31, 2018, Plaintiff Jun Hua Yang ("Yang"), a nail technician, commenced this wage-and-hour and employment discrimination litigation against Rainbow Nails Salon IV Inc. ("Rainbow Nails") and Gina Dang ("Dang") (collectively, "Defendants") based on alleged violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), the New York Labor Law ("NYLL"), the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL").  (Compl. dated Aug. 31, 2018, Dkt. No. 1; *see also* Am. Compl. dated Dec. 10, 2018, Dkt. No. 19).[1] Yang has moved for conditional certification of her FLSA claims for "all nail technicians who are or were formerly employed by Defendants" in the last three years.  (Pl.'s Mem. in Supp. ("Pl.'s Br.") dated Apr. 10, 2019, Dkt. No. 36, at 3).  The Honorable Dora L.

---

[1] The original Complaint also contained a cause of action for national origin discrimination under 42 U.S.C. § 1981.  (Compl. ¶¶ 101–105).  This claim is not in the Amended Complaint.

Irizarry referred the motion to the undersigned for decision.[2]  (Order Referring Mot. dated Feb. 19, 2019).  For the reasons stated below, the motion is granted.

STANDARDS FOR MOTION FOR COLLECTIVE CERTIFICATION

FLSA was enacted to eliminate "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers." 29 U.S.C. § 202(a).  The statute requires employers to pay employees a minimum hourly wage, *id*. § 206, and an overtime rate of "not less than one and one-half times the regular rate at which [they are] employed," *id*. § 207(a)(1).  And under promulgated FLSA regulations, "if it is a requirement of the employer that the employee must provide tools of the trade which will be used in or are specifically required for the performance of the employer's particular work, there would be a violation of [FLSA] in any workweek when the cost of such tools purchased by the employee cuts into the minimum or overtime wages required to be paid him under [FLSA]." 29 C.F.R. § 531.35; *see also Hernandez v. Spring Rest. Grp., LLC*, No. 17-CV-6084, 2018 WL 3962832, at *1 (S.D.N.Y. Aug. 17, 2018).

Section 216(b) of FLSA provides a private right of action to an employee to recover unpaid minimum wages or overtime compensation from an employer who violates FLSA's provisions.  The same section permits plaintiffs to have their case certified as a collective action on behalf of "themselves and other employees similarly situated." 29 U.S.C. § 216(b).  Unlike Rule 23 class actions, a collective action is "opt-

---

[2] Federal law permits "a magistrate judge to hear and determine any pretrial matter pending before the court," 28 U.S.C. § 636(b)(1)(A), including a motion for conditional certification of a collective action, which is only a "preliminary determination" and not dispositive.  *Patton v. Thomson Corp.*, 364 F. Supp. 2d 263, 265–67 (E.D.N.Y. 2005); *see also Summa v. Hofstra Univ.*, 715 F. Supp. 2d 378, 383–84 (E.D.N.Y. 2010) (collecting cases).

in," meaning to join the suit a person must "give[ ] his consent in writing to become such a party" and file that consent "in the court in which such action is brought." *Id*.

A two-stage inquiry determines whether a motion to certify a FLSA collective action should be granted. *Summa v. Hofstra Univ.*, 715 F. Supp. 2d 378, 384 (E.D.N.Y. 2010); *Bifulco v. Mortg. Zone, Inc.*, 262 F.R.D. 209, 212 (E.D.N.Y. 2009). "The first step involves the court making an initial determination to send notice to potential opt-in plaintiffs who may be 'similarly situated' to the named plaintiffs with respect to whether a FLSA violation has occurred." *Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010). "The court may send this notice after plaintiffs make a 'modest factual showing' that they and potential opt-in plaintiffs 'together were victims of a common policy or plan that violated the law.'" *Id*. (quoting *Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997)). "[T]he purpose of this first stage is merely to determine *whether* 'similarly situated' plaintiffs *do in fact exist*." *Id*. (additional emphasis added).

"In making this showing, nothing more than substantial allegations that the putative [collective] members were together the victims of a single decision, policy or plan is required. This first stage determination is based on the pleadings, affidavits and declarations." *Bifulco*, 262 F.R.D. at 212 (quotations and citations omitted) (alterations omitted); *see also Hallissey v. Am. Online, Inc.*, No. 99-CV-3785, 2008 WL 465112, at *1 (S.D.N.Y. Feb. 19, 2008). That being said, "[m]ere allegations in the complaint are not sufficient; some factual showing by affidavit or otherwise must be made." *Prizmic v. Armour, Inc.*, No. 05-CV-2503, 2006 WL 1662614, at *2 (E.D.N.Y. June 12, 2006) (quotations omitted). Ultimately, however, although the inquiry "cannot be satisfied simply by 'unsupported assertions,' . . . it should remain a low standard of proof." *Myers*, 624 F.3d at 555 (quoting *Dybach v. Fla. Dep't of Corr.*, 942 F.2d 1562, 1567 (11th

3

Cir. 1991)). Consistent with this low standard of proof, "'[a]t [this] initial assessment stage, . . . the [c]ourt does not resolve factual disputes, decide substantive issues going to the ultimate merits or make credibility determinations.'" *Summa*, 715 F. Supp. 2d at 385 (quoting *Francis v. A & E Stores, Inc.*, No. 06-CV-1638, 2008 WL 2588851, at *2 (S.D.N.Y. June 26, 2008)).[3]

"Because the standard at the first stage is fairly lenient, courts applying it typically grant conditional certification." *Amador v. Morgan Stanley & Co.*, No. 11-CV-4326, 2013 WL 494020, at *3 (S.D.N.Y. Feb. 7, 2013) (quotations and alterations omitted). Should a plaintiff make the requisite initial showing, she is entitled to conditional certification of a collective action, and a court may "authorize an FLSA plaintiff to provide written notice to potential plaintiffs of their right to join in the action." *Gortat v. Capala Bros., Inc.*, No. 07-CV-3629, 2009 WL 3347091, at *8 (E.D.N.Y. Oct. 16, 2009), *aff'd*, 568 F. App'x. 78 (2d Cir. 2014); *see Winfield v. Citibank, N.A.*, 843 F. Supp. 2d 397, 402 (S.D.N.Y. 2012) ("If the plaintiffs demonstrate that 'similarly situated' employees exist, the [c]ourt should conditionally certify the class, order that appropriate notice be given to putative class members, and the action should continue as a collective action throughout the discovery process.") (quotations omitted).

It is following the distribution of the notice, the completion of any opt-in period, and any additional discovery, that the Court undertakes the second stage of the two-part

---

[3] The modest factual showing is "considerably less stringent than the requirements for class certification under Rule 23." *Poplawski v. Metroplex on the Atl., LLC*, No. 11-CV-3765, 2012 WL 1107711, at *3 (E.D.N.Y. Apr. 2, 2012) (quotations omitted). That is, "a named plaintiff in a collective action need not demonstrate other facts—numerosity, commonality, typicality, and adequacy of representation—which are required to bring a class action" under Rule 23. *Sexton v. Franklin First Fin., Ltd.*, No. 08-CV-4950, 2009 WL 1706535, at *4 (E.D.N.Y. June 16, 2009) (quotations omitted).

§ 216(b) inquiry. "[A]t the second stage, the district court will, on a fuller record, determine . . . whether the plaintiffs who have opted in *are in fact* 'similarly situated' to the named plaintiffs." *Myers*, 624 F.3d at 555 (emphasis added) (quotations omitted). "The action may be 'de-certified' if the record reveals that they are not, and the opt-in plaintiffs' claims may be dismissed without prejudice." *Id.*

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

For the purposes of this collective certification motion, the following facts are drawn from the affidavit Yang submitted with her motion.[4] Yang worked as a nail technician at Rainbow Nails, located in Astoria, Queens, from about January 2000 to July 28, 2018. (Aff. of Jun Hua Yang ("Second Aff.") filed Apr. 10, 2019, Dkt. No. 37, ¶ 3). Dang, known to Yang as the "Boss," ran Rainbow Nails and determined all of the nail technicians' work schedules, pay rates, and payment methods; she also supervised their work. (*Id.* ¶¶ 4–5).

Over the course of her employment at Rainbow Nails, Yang was payed a "fixed daily rate" that changed from year to year and season to season, but ranged from about $70 to $100 a day; she was paid this rate regardless of the hours she worked, which were approximately 50 to 55 hours a week depending on the season, and was always paid her wage through a combination of cash and check. (*Id.* ¶¶ 7–10). In addition, Yang was required to purchase her own work supplies that were necessary to perform

---

[4] Defendants recognize that at this stage, the Court does not determine the merits of a plaintiff's allegations or claims. (Defs.' Mem. of Law in Opp'n ("First Opp'n Br.") dated Feb. 22, 2019, Dkt. No. 29, at 2 n.1 ("While defendants deny many of Plaintiff's assertions in her affidavit and brief, we are cognizant that 'a court does not weigh the merits of a plaintiff's underlying claims, resolve factual disputes, or evaluate credibility at this stage[.]'") (quoting *Placinta v. Grazina Pilka, Inc.*, No. 16-CV-4272, 2018 WL 5024170, at *7 (E.D.N.Y. Sept. 21, 2018))).

5

her duties as a nail technician, which included about $350 for a nail-filing drill system, $35 on a tool set, and $5 a week on plastic gloves and face masks. (*Id.* ¶ 20).

Rainbow Nails employs about 10 employees at any given time, and during her employment there, Yang became familiar with around 20 other nail technicians and frequently conversed with the ones she identified as Chinese. (*Id.* ¶¶ 6, 12). These conversations revealed that Yang and her fellow nail technicians were subject to the same or similar policies that are alleged to violate FLSA. For example, a nail technician known as Vina began working at Rainbow Nails in 2014 and worked between 50 and 60 hours a week (which Yang knew because they shared a work schedule) and was paid $100 a day at a fixed rate. (Second Aff. ¶ 12). Amy, Anna, and Lily—also nail technicians—made around $75 to $95 a day depending on the season and worked around five days, 50 to 60 hours, per week. (*Id.*). Yang learned through talking with other Chinese nail technicians that they too were paid with a combination of cash and check and that she and other employees were required to sign wage receipts they believed did not properly document their hours. (*Id.* ¶¶ 14–15). Yang's conversations with her coworkers occurred while on their way home from work, while doing clients' nails together, and while having lunch; in the course of such conversations, she learned about their pay. (*Id.* ¶ 12).

Yang initiated this action on August 31, 2018 and amended her complaint on December 10, 2018. The Amended Complaint contains nine causes of action:[5] (1) violation of the minimum wage provision of FLSA, (Am. Compl. ¶¶ 52–59); (2) violation

---

[5] The Amended Complaint contains two counts labeled as "Count VII." (*See* Am. Compl. ¶¶ 85–93). The Court treats the second Count VII as Count 8 and what is labeled as "Count VIII" as Count 9.

6

of minimum wage provisions of NYLL, (*id.* ¶¶ 60–63); (3) violation of overtime provisions of FLSA, (*id.* ¶¶ 64–71); (4) violation of overtime provisions of NYLL, (*id.* ¶¶ 72–75); (5) violation of the time-of-hire wage notice requirement of NYLL, (*id.* ¶¶ 76–80); (6) violation of NYLL for failing to provide paystubs, (Am. Compl. ¶¶ 81–84); (7) violation of FLSA for failure to reimburse for expenses of tools of the trade, (*id.* ¶¶ 85–87); (8) employment discrimination on the basis of race, ethnicity, and national origin in violation of NYSHRL, (*id.* ¶¶ 88–93); and (9) employment discrimination on the basis of national origin under NYCHRL, (*id.* ¶¶ 94–100). Yang seeks certification of the case as a collective action under FLSA, issuance of notice to similarly-situated employees, a declaratory judgment that Defendants' employment practices violate FLSA and NYLL, an injunction against Defendants from engaging in those practices, various forms of damages, and costs and fees. (Prayer for Relief, attached to Am. Compl., Dkt. No. 19 at 18–19).

On January 30, 2019, Yang filed a motion to certify a FLSA collective action. (Mot. to Certify ("First Motion") dated Jan. 30, 2019, Dkt. No. 23). She also filed an affidavit in support of that motion. (Aff. of Jun Hua Yang ("First Aff.") dated Jan. 30, 2019, Dkt. No. 26). Defendants objected to the motion, primarily on the basis that Yang's single affidavit did not satisfy the modest factual showing required for the preliminary stage of FLSA collective certification. (*See* Defs.' Mem. of Law in Opp'n ("First Opp'n Br.") dated Feb. 22, 2019, Dkt. No. 29, at 3–6). In response to Defendants' opposition, Yang maintained that her affidavit was sufficient, but also stated that she was willing to produce additional detail to support her motion. (Pl.'s Reply Mem. of Law in Supp. dated Mar. 15, 2019, Dkt. No. 31, at 5, 8). Rather than rule on the motion when Yang was willing to provide more evidence, the Court denied the motion without

7

prejudice and granted Yang an opportunity to refile the motion and supplement it with additional material.  (*See* Order dated Mar. 27, 2019, Dkt. No. 32).

On April 10, 2019, Yang filed her renewed motion to certify a FLSA collective. (Mot. to Certify ("Second Mot.") dated Apr. 10, 2019, Dkt. No. 35).  Again, it is accompanied by a single affidavit from Yang herself, which includes more factual detail and context with regard to her conversations with other nail technicians and the Defendants' employment practices.  (Second Aff.).  Yang's motion also seeks production from Defendants of an Excel sheet of "names, title, compensation rate, period of employment, last known mailing addresses, e-mail addresses and all known telephone numbers" for the employees covered by the collective.  (Pl.'s Br. at 2).  She also requests any proposed notice and consent forms be posted "in a conspicuous location" at Rainbow Nails.  (*Id.*).

Defendants again oppose the motion for collective certification, objecting to the new affidavit, arguing that it should be rejected because it "directly contradicts her sworn statements in [the] earlier affidavit, on the most fundamental issue in this litigation."  (Defs.' Mem. of Law in Opp'n ("Second Opp'n Br.") dated Apr. 24, 2019, Dkt. No. 39, at 1).  They also argue that Yang has not provided sufficient specificity with regard to *when* she spoke with other nail technicians, indicating that they may have happened prior to FLSA's statute of limitations.  (*Id.* at 4–5).

DISCUSSION

I.    Conditional Certification of Collective Action

Yang seeks conditional certification of a collective action of "all nail technicians who are or were formerly employed by Defendants" from August 31, 2015 to the present. (*See* Pl.'s Br. at 1, 3; Proposed Notice of Pendency ("Proposed Notice"), attached as Ex. A

8

to Pl.'s Br., Dkt. No. 36, at 1). Yang must demonstrate that she is similarly situated to the potential opt-in plaintiffs—all the nail technicians at Rainbow Nails for the three years prior to the filing of the initial complaint—and that such individuals were subject to the same "unlawful policy." *See Myers*, 624 F.3d at 555 ("The first step involves the court making an initial determination to send notice to potential opt-in plaintiffs who may be 'similarly situated' to the named plaintiffs with respect to whether a FLSA violation has occurred."); *Zeledon v. Dimi Gyro LLC*, No. 15-CV-7301, 2016 WL 6561404, at *6 (S.D.N.Y. Oct. 13, 2016) ("[A] plaintiff must at least make a facially adequate showing that putative members of the collective are similarly situated with respect to the FLSA violations the named plaintiff alleges[.]") (alterations and quotations omitted). With regard to her FLSA claims, Yang alleges that she was deprived of minimum and overtime wages and that she was made to pay for tools necessary for her trade. (Am. Compl. ¶ 3). While Yang also makes claims under the NYLL, NYSHRL, and NYCHRL, at this stage it is appropriate only to consider whether the alleged policies violate FLSA. "Collective actions under the FLSA encompass only FLSA violations." *Feng v. Soy Sauce LLC*, No. 15-CV-3058, 2016 WL 1070813, at *4 (E.D.N.Y. Mar. 14, 2016) (citing *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 247 (2d Cir. 2011)).[6]

Yang has established through her affidavit and her Amended Complaint that she was subject to three policies that run afoul of FLSA: Defendants' practice of (1) paying employees fixed daily amounts that, when divided by the numbers of hours actually worked, do not pay the required hourly minimum wage; (2) failing to compensate

---

[6] "To bring state-law claims on behalf of others against Defendants, Plaintiff[s] must seek class certification pursuant to Rule 23." *Feng*, 2016 WL 1070813, at *4.

9

employees for overtime hours they worked; and (3) forcing employees to pay for the equipment needed to perform their job duties. Yang attests that she was subject to all three practices. (Second Aff. ¶¶ 7–9, 11, 20). Defendants acknowledge that, although they dispute Yang's allegations, the Court cannot determine "factual issue[s] that reach[ ] the merits of the plaintiffs' claims [because doing so] is . . . inappropriate at this stage of the proceeding." *Schwerdtfeger v. Demarchelier Mgmt., Inc.*, No. 10-CV-7557, 2011 WL 2207517, at *5 (S.D.N.Y. June 6, 2011); *supra* note 4.

Yang's affidavit on its own warrants conditional certification of a collective action. At the conditional certification stage "the burden is so low that even one or two affidavits establishing the common plan may suffice." *Kim v. 511 E. 5th St., LLC*, 985 F. Supp. 2d 439, 445–46 (S.D.N.Y. 2013) (collecting cases); *see also Mata v. Foodbridge LLC*, No. 14-CV-8754, 2015 WL 3457293, at *3 (S.D.N.Y. June 1, 2015) ("[C]ourts in this circuit have routinely granted conditional collective certification based solely on the personal observations of one plaintiff's affidavit.") (quotations omitted).

The crux of the Defendants' second opposition to Yang's motion is what they allege is the "startling contradiction" between her two affidavits. (Second Opp'n Br. at 7). Chiefly, they point to the fact that in Yang's first affidavit, she states she did "not know the[ ] exact wage rates" of other nail technicians, (First Aff. ¶ 14), but in her second one, Yang states that she found out through conversations with various coworkers their approximate wage ranges, (Second Aff. ¶ 12).

Defendants' position is without merit. In the first affidavit, Yang claims not to know the exact wages of the nail technicians with whom she had discussions. (First Aff. ¶ 14). In the second affidavit, she does not provide *exact* wages, but rather the *possible* ranges of their pay. (*See, e.g.*, Second Aff. ¶ 12 ("Amy was paid at fixed daily rates of

10

*about* $75 to $85. . . . Anna also told me that she was paid at fixed rates of *about* $95 per day[.]") (emphasis added)). This is not a contradiction. *Cf. I.M. v. United States*, 362 F. Supp. 3d 161, 174 n.9 (S.D.N.Y. 2019) ("Although parties cannot create disputes as to material facts by contradicting themselves, Nurse Hines's testimony is not inconsistent with, but is merely more specific than, the notes she took [at the time of the events in question].") (citation omitted); *Wesley-Jessen, Inc. v. Volk*, No. 75-CV-2410, 1976 WL 21209, at *1 n.5 (N.D. Ill. Jan. 29, 1976) ("Plaintiff requests that defendant's second affidavit . . . be struck because it contradicts the first affidavit. Defendant's second affidavit is more specific as to the defendant's activities than is the first affidavit. No fruitful purpose would be served by striking the second affidavit.").

The cases on which Defendants rely are readily distinguishable. For example, in *Mendoza v. Casa de Cambio Delgado, Inc.*, the court denied collective certification where plaintiffs' affidavits contradicted the amended complaint. No. 07-CV-2579, 2008 WL 938584, at *3 (S.D.N.Y. Apr. 7, 2008). The affidavits asserted that the employees worked until 9:00 P.M. during the relevant period, but the complaint stated they worked until midnight during the same period. *Id.* The contradiction at issue in *Mendoza* relates to two different and specific times, and therefore is not applicable here where Yang provides only more specificity in her second affidavit, not a contradiction. And the court denied certification in *Mendoza* because plaintiff's allegations contradicted the actual payroll records submitted. *Id.* There are no records presented to the Court or any similar tension in this case.

*Genxiang Zhang v. Hiro Sushi at Ollie's Inc.* actually demonstrates the lack of merit in Defendants' position. No. 17-CV-7066, 2019 WL 699179 (S.D.N.Y. Feb. 5, 2019). There, the defendants claimed that numerous contradictions existed between the

11

plaintiff's deposition testimony and subsequent affidavit. With regard to one of those purported contradictions, the court explained:

> [Plaintiff] attests, in his Affidavit, that a fry wok named Lambo—whom he describes as a "close friend," with whom he rode the subway home—told him that he worked from 11:30 a.m. to 11:00 p.m., six days per week, and was also paid a flat rate without full compensation for his overtime hours. While the transcript excerpts submitted by [Defendants] suggest that, at his deposition, [Plaintiff] testified that he did now know the pay rates or amounts paid to employees other than himself, *this is not in direct contradiction to the statements made in his Affidavit* regarding Lambo, as he merely indicates there that he was aware that Lambo was paid a "flat rate," without stating that he was aware of the specific rate or amount of pay that Lambo received.

*Id.* at *9 (emphasis added) (citations omitted). That is, one of the plaintiffs in *Genxiang Zhang* averred to more specific facts in his affidavit than those in his deposition, a difference that did not create a contradiction. (And indeed, the court conditionally certified a collective composed of fry woks. *Id.* at *10). The same conclusion is appropriate in this case. Yang describes in her second affidavit the circumstances by which she came to have conversations with other nail technicians and provides substantially more detail of those conversations than she did in her first. The additional specificity is not a direct contradiction. And because Yang attests only to the approximate fixed daily rates and the approximate hours worked, her second affidavit does not contain the "exact wages" of her fellow employees. At best, dividing an *estimate* of the fixed daily rate by an *estimate* of hours worked in a day leads only to an approximate, not an exact, wage.[7]

---

[7] That the evidence Yang proffers is based on hearsay does not diminish its value in the context of a motion for conditional certification of a collective action. "'[C]ourts in this Circuit regularly rely on hearsay evidence to determine the propriety of sending a collective action notice.'" *Guzelgurgenli v. Prime Time Specials Inc.*, 883 F. Supp. 2d 340, 350 (E.D.N.Y. 2012) (alterations omitted) (quoting *Moore v. Eagle Sanitation*, 276

12

Now that Yang has provided significantly more detail in her second affidavit than in her first with regard to the conversations she had, with whom, and under what circumstances, (*see* Second Aff. ¶ 12), Yang has met her minimal burden. The evidence in Yang's affidavit is sufficient to demonstrate that Yang is similarly situated to nail technicians at Rainbow Nails and that all of them were subject to a common wage policy of being paid at a fixed rate that, when averaged over the hours they actually worked, did not compensate them for minimum wage or overtime, and a common policy of not reimbursing employees for tools of the trade. *See Khamsiri v. George & Frank's Japanese Noodle Rest. Inc.*, No. 12-CV-265, 2012 WL 1981507, at *1 (S.D.N.Y. June 1, 2012) (approving conditional collective certification based on single plaintiff's affidavit "confirming that she and other non-exempt employees employed by defendants . . . , who performed work similar to hers, were . . . paid less than the statutory minimum wage and not paid overtime pay"); *Summa*, 715 F. Supp. 2d at 386 n.6 (citing *Wraga v. Marble Lite, Inc.*, No. 05-CV-5038, 2006 WL 2443554, at *1 (E.D.N.Y. Aug. 22, 2006) (granting conditional certification based on the complaint and a single affidavit, which alleged failure to pay overtime, and where plaintiff knew, based on conversations, of at least seven other employees subject to a similar policy)).

Defendants contend that some of the nail technicians Yang claims to have had conversations with may not have been employed during the relevant time period. (*See* Second Opp'n Br. at 4–5). This is not a barrier to conditional certification. Even if some

---

F.R.D. 54, 59 (E.D.N.Y. 2011)); *see also Salomon v. Adderley Indus., Inc.*, 847 F. Supp. 2d 561, 565 (S.D.N.Y. 2012) ("Given that Defendants will have an opportunity to move for decertification at the second stage, if the plaintiffs are not 'similarly situated,' and the prediscovery posture of the case, the Court will consider the hearsay statements here.").

of the conversations took place prior to the collective action period that the Court authorizes, they still provide probative information about whether a common policy existed. Nor does the fact that conversations took place prior to the period mean that they were not employed in later years. In any event, there is a sufficient number of co-workers identified who worked during the relevant period to justify conditional certification. (*See* Second Aff. ¶¶ 6, 12).

Defendants also cite a bevy of cases to suggest that even Yang's second affidavit is too vague to justify conditional certification. (*See* Second Opp'n Br. at 5). The cases are inapposite. *See, e.g.*, *Fa Ting Wang v. Empire State Auto Corp.*, No. 14-CV-1491, 2015 WL 4603117, at \*10 (E.D.N.Y. July 29, 2015) ("Plaintiff does not explain the basis of this knowledge, identify any employee by name or describe any specific conversations[.]"); *Mata*, 2015 WL 3457293, at \*4 ("[I]nformation regarding where or when these observations or conversations occurred . . . is critical in order for the Court to determine the appropriate scope of the proposed class and notice process.") (quotations omitted); *Qing Gu v. T.C. Chikurin, Inc.*, No. 13-CV-2322, 2014 WL 1515877, at \*3 (E.D.N.Y. Apr. 17, 2014) ("Plaintiffs fail to provide any factual detail about the other employees, such as names of fellow employees whom they observed or with whom and when they had conversations about not receiving minimum wage or overtime compensation. Nor do they identify the job titles or duties performed by their fellow employees."); *Sanchez v. JMP Ventures, L.L.C.*, No. 13-CV-7264, 2014 WL 465542, at \*2 (S.D.N.Y. Jan. 27, 2014) ("Plaintiff does not . . . provide *any* detail as to a *single* such observation or conversation.") (emphasis in original). Yang explains where these conversations happened (at work and on lunch breaks, walking home from work, on the bus) and provides the first names and job titles of the employees she spoke with, as well as

14

general time periods of when the conversations occurred. (Second Aff. ¶¶ 6, 12). The lack of *specific* dates for these conversations does not detract from the other details Yang does provide, and she has met the minimal burden for the Court to certify the proposed collective.

The collective Yang proposes is limited in terms of type of employees and the workplace location—namely, she seeks to certify a collective that includes only other nail technicians who worked at Rainbow Nails in Astoria for the three years prior to the filing of the Complaint, (Pl.'s Br. at 1, 3), which amounts to approximately 20 employees, (*see* Second Aff. ¶ 6). These factors weigh in favor of granting collective certification. *See, e.g.*, *Nahar v. Dozen Bagels Co.*, No. 15-CV-1613, 2015 WL 6207076, at *5 (S.D.N.Y. Oct. 20, 2015) ("In this case, . . . Nahar seeks collective action status on behalf of approximately forty individuals, all of whom worked at the single location where she herself was employed."); *Kim*, 985 F. Supp. 2d at 448 ("Kim seeks collective action status on behalf of a relatively small number of individuals, all of whom worked at a single location.").

Any possible differences between Yang and other employees, such as the number of hours worked or the fixed daily rate, are to be analyzed at subsequent stages of the case. *See Romero v. H.B. Auto. Grp., Inc.*, No. 11-CV-386, 2012 WL 1514810, at *8 (S.D.N.Y. May 1, 2012) ("This requirement does not mean that plaintiffs must show that each individual plaintiff[']s job duties are perfectly identical; rather, plaintiffs need only show that they are similar. Such variances are more appropriately analyzed during the second—decertification—stage.") (citations omitted). The Court therefore finds it appropriate to conditionally certify a collective of current and former nail technicians employed by Defendants in the three years prior to the filing of the original Complaint.

15

II.   Distribution of Notice

Defendants raise a number of concerns regarding the Proposed Notice. (Second Opp'n Br. at 6). These include the fact that the notice does not say Yang is suing on behalf of herself, that it discourages opt-in employees from contacting defense counsel, and that it does not state that the recipient of the notice need not act on it. (*Id.*). In light of these concerns, the parties are directed to meet and confer to discuss any changes to the proposed notice, and provide a revised proposed notice to the Court for review.

CONCLUSION

For the reasons stated above, the motion for conditional certification of a collective action is granted, as noted. Defendants are directed to provide the requested contact information by **May 31, 2019**. The parties are directed to meet and confer, and Yang shall submit a revised proposed notice by **May 31, 2019** for the Court's approval.

SO ORDERED.

*/s/ Sanket J. Bulsara* May 16, 2019
SANKET J. BULSARA
United States Magistrate Judge

Brooklyn, New York

16